In re CHURCHILL DEVELOPMENT LTD., Debtor.

DEL WEBB COMMERCIAL PROPER-TIES CORPORATION, Movant,

v.

CHURCHILL DEVELOPMENT LTD., Respondent.

Bankruptcy No. 86–3698–PHX–SSC. Adv. No. "A".

United States Bankruptcy Court, D. Arizona.

March 27, 1987.

Frederick K. Steiner, Jr., Patrick E. Hoog, Snell & Wilmer, Phoenix, Ariz., for Del Webb.

C. Taylor Ashworth, Meyer, Hendricks, Victor, Osborn & Maledon, P.A., Phoenix, Ariz., for debtor.

## DECISION AND ORDER

SARAH SHARER CURLEY, Bankruptcy Judge.

On February 5, 1987, Del Webb Commercial Properties Corporation ("Del Webb") and Churchill Development Ltd. ("Debtor") appeared before this court concerning a final pretrial conference on Del Webb's motion to vacate the stay, motion to dismiss, and motion to abstain. Prior to the February 5 hearing, however, Del Webb had requested by letter that the court entertain oral argument on the motion to dismiss and the motion to abstain on February 5 in lieu of proceeding with a final pretrial conference in all matters. The Del Webb position was predicated on the fact that the Debtor had commenced Adversary No. 86–710 in

the Bankruptcy Court which had analogous legal and factual issues to the three pending motions of Del Webb, and the Debtor had also filed a motion with the District Court in the District of Arizona to withdraw the reference of the Debtor's adversary proceeding to the District Court for final determination. After a review of the letter and all of the documentation that had been filed on the three motions, this Court determined that oral argument on the motion to dismiss and the motion to abstain of Del Webb might be appropriate on February 5. Therefore, the court notified the Debtor and Del Webb to be prepared to argue the relevant legal issues on February 5. A further procedural history in this case is warranted, so that it may be reviewed in light of this court's decision on the record on February 5.

In 1984, Del Webb acquired a certain parcel of real property in Fort Collins, Colorado. This parcel contained approximately 536 acres ("Fort Collins real property"). The property was purchased from Deines Agriculture and Livestock Company ("Deines"), a general partnership. At the time Del Webb acquired the aforesaid parcel, Del Webb also obtained an option and right of first refusal in certain adjacent real property. At the time of the purchase from Deines, Del Webb executed a $4 million nonrecourse promissory note, which was secured by a deed of trust on the Fort Collins real property. Subsequently, Del Webb sold an undivided one-half interest in the parcel and the option and right of first refusal to the Debtor for the aggregate sum of $4.1 million. Del Webb and the Debtor entered into a joint venture agreement in order to develop the real property. At the time of the purchase agreement and the joint venture agreement with the Debtor, Del Webb represented that the Fort Collins real property had an appraised value of $8,900,000. Del Webb also allegedly represented to the Debtor that development of the parcel could proceed on a profitable basis. The consideration paid by the Debtor for its undivided one-half interest in the parcel of real property and the option and right of first refusal consisted of (i) $850,000 in cash paid by the Debtor to Del

Webb, (ii) the assumption of one-half of the payments under the Deines promissory note and deed of trust in the amount of approximately $2 million, and (iii) delivery of a separate promissory note to Del Webb, in which the Debtor was the maker, in the amount of $1,250,000.

Del Webb and the Debtor determined that the property could not be developed without an additional line of credit to provide the financing. Del Webb alleged that it advanced the funds under this line of credit and that the Debtor subsequently owed $425,000 as a result of the advances made on the Debtor's behalf. In addition, Del Webb alleged that a demand loan for additional financing of the development of the real property was due and owing to Del Webb in the amount of $435,500. The Fort Collins real property in Colorado has only been partially developed.

In a separate transaction, the Debtor entered into a joint venture agreement with Amway Properties Corporation ("Amway"). This joint venture with Amway also concerned the Fort Collins real property. It appears that the Debtor entered into such an arrangement with Amway to raise additional funding to participate in the joint venture arrangement with Del Webb. In the joint venture arrangement with Amway, the Debtor retained a 20 percent interest in what became known as the "Fort Collins Joint Venture." In turn, the arrangement with Del Webb was restructured, so that the Fort Collins Joint Venture had a 50 percent interest in the joint venture agreement with Del Webb.

On September 30, 1986, the Debtor filed its petition under Chapter 11 of the Bankruptcy Code. On November 6, 1986, Del Webb filed three motions with the Bankruptcy Court; to wit: a motion to dismiss under Section 1112(b) of the Bankruptcy Code, alleging lack of good faith in the filing of the Chapter 11 proceeding by the Debtor and stating that essentially the Chapter 11 only involved a two-party dispute; a motion for relief from the automatic stay, so that Del Webb might pursue the Debtor in the State Court of Arizona; and a motion to abstain on the basis of 28

U.S.C. § 1334(c)(2) and 11 U.S.C. § 305. A motion to consolidate all of the foregoing matters was filed with the Bankruptcy Court on December 16, 1986, after a preliminary hearing only on the vacatur of stay motion had been held on December 5. This court subsequently made a determination by order dated December 5, 1986, that the three motions filed by Del Webb were all interrelated, involving analogous issues of law and fact, so that consolidation of the three motions appeared appropriate. Based upon the consolidation of the three motions, a final pretrial conference was scheduled before this court on February 5, 1987.

On December 12, 1986, the Debtor commenced an adversary proceeding with the Bankruptcy Court, designated Adversary No. 86–710, which delineated a number of claims concerning the entry of the Debtor into the joint venture agreement and the purchase agreement with Del Webb. The claims of the Debtor, as stated in the complaint, indicated that Del Webb, as the joint venturer, breached its fiduciary duty to the Debtor; refused to dissolve or liquidate the joint venture; breached its contract with the Debtor; engaged in consumer fraud under Arizona Law; engaged in violations of the Arizona Securities Law (an interest in a joint venture is being alleged herein as a "security"); engaged in violations of the Federal Securities Laws, specifically the Securities and Exchange Act of 1934, Section 10(b) and Rule 10b–5 promulgated thereunder; engaged in conduct constituting a violation of the Arizona Racketeering Statutes; and made fraudulent representations to the Debtor, which would permit the Debtor to rescind the joint venture agreement and the purchase agreement and permit the Debtor to receive the funds turned over to Del Webb by it.

On January 6, 1987, the Debtor filed a motion seeking to withdraw the reference from the Bankruptcy Court as to the Debtor's adversary and to proceed with the adversary proceeding in the United States District Court For The District of Arizona. In its motion to withdraw the reference, the Debtor indicated that pursuant to 28 U.S.C. § 157(d), the District Court had broad discretion to withdraw the reference as to the Debtor's adversary proceeding. The Debtor stated that its adversary proceeding was not "core" pursuant to Section 157(b)(2), and stated that a jury trial "could only take place in the District Court."

On or about January 8, 1987, shortly after the Debtor had filed its motion to withdraw the reference as to its adversary proceeding, Del Webb filed a motion to withdraw the reference to the District Court as to the entire Chapter 11 proceedings, which would include the various consolidated motions pending before the Bankruptcy Court. Del Webb relied on 28 U.S.C. § 157(d) to withdraw the reference as to the entire Chapter 11 proceedings. As a part of its motion to withdraw the reference, Del Webb reasserted the various positions presented to the Bankruptcy Court concerning its consolidated motions.

Del Webb made allegations at oral argument on February 5 that forfeiture proceedings, pursuant to Arizona Law, had been commenced by Del Webb against the Debtor prior to the institution of the Debtor's Chapter 11 proceedings herein. The forfeiture proceedings of Del Webb focused on the security interest obtained by Del Webb at the time it sold an undivided one-half interest in the Fort Collins real property to the Debtor. As previously stated hereinabove, the Debtor had executed at that time a $1,250,000 promissory note in favor of Del Webb, which was secured by the Debtor's interest in the Fort Collins joint venture. The forfeiture sale by Del Webb was scheduled for November 21, 1986. In addition, Del Webb had sought to have certain shareholders of the Debtor held personally liable on an alter ego theory. This alter ego claim, as well as a claim alleging breach of contract, et cetera, were incorporated in a first amended complaint, dated December 3, 1986, assigned No. C 608631 in the Superior Court of the State of Arizona. It was unclear at oral argument on February 5 to what extent Del Webb was pursuing this litigation in the State Court. The Debtor does not appear to have been a party to the proceeding, but at least certain action was being

taken to pursue the shareholders of the Debtor at the time of the commencement, or shortly after the commencement, of the Debtor's Chapter 11 proceedings.

## DISCUSSION

■ What is perhaps most troubling to this court concerning the procedural history of this case is that during the period between January 6 and January 8, 1987, not only Del Webb, but also the Debtor, felt constrained to file motions to withdraw the reference as to specific adversary proceedings or even as to the Chapter 11 case as a whole. It was apparent in the documentation filed to withdraw the reference by Del Webb and the Debtor that essentially two parties were engaged in a potentially prolonged and vitriolic dispute concerning vacant property in Colorado. Although attempts had been made to develop the property, all parties agreed that the development so far was limited. It was clear that additional capital would be required to complete the project in Fort Collins. It was also clear to this court that the Debtor believed that it had been defrauded and that it had a number of potential claims under, *inter alia*, both Federal and Arizona State Law. The Federal claims of the Debtor arguably involved interstate commerce. Pursuant to 28 U.S.C. § 157(d), the Bankruptcy Court should mandatorily abstain from any such disputes under Federal Law.

■ By engaging in protracted litigation with Del Webb, ultimately the Debtor hoped that it would receive a return of the consideration paid by it to enter into the purchase agreement and joint venture agreement with Del Webb. However, other than this hope of eventual success through litigation, the Debtor had *no other assets*. The liabilities that the Debtor owed to third parties involved a limited number of creditors, with the vast majority of the claimants in both dollar amount and number being associated with the Fort Collins real property. In essence, this protracted litigation involving Federal and Arizona State Law claims eviscerated this Chapter 11 proceeding, leaving an empty shell to be administered somehow by the Bankruptcy Court. However, the purpose of Chapter 11 is reorganization of a viable enterprise or business, not to serve as a caretaker. Chapter 11 is not to be invoked by some individual or individuals to pursue their own purposes or to engage in gamesmanship. In acting in this matter, this Court realizes that there may be various hearings scheduled before the United States District Court in this case. Therefore, rather than render a decision on the Del Webb motions that were filed in the Bankruptcy Court, this Court is acting *sua sponte* to determine whether this case should not be dismissed pursuant to 11 U.S.C. § 305. This Court has the power to so act. *In re Coram Graphic Arts*, 11 B.R. 641, 7 BCD 1014 (E.D.N.Y.1981). Moreover, in light of the jurisdictional constraints placed on the Bankruptcy Courts, this Court must make a determination as to what is really in the best interests of the creditors and Debtor in this case. It is appropriate to dismiss a Chapter 11 case under 11 U.S.C. § 305, if litigation which is only a related proceeding to the Chapter 11 case "overshadows" or "overwhelms" any "core" bankruptcy issues that are present. *In re Concord Storage and Warehouse Company, Inc.*, 40 B.R. 831, 11 BCD 1363, 1366 (S.D.Ohio 1984). Any "core" bankruptcy issues in this case are clearly overwhelmed by litigation that would only be characterized as "related proceedings" and by certain claims under Federal Law involving interstate commerce that would require *mandatory* abstention by this Court. Because of this Court's inability to exercise comprehensive jurisdiction, this Chapter 11 case is dismissed.

■ Pursuant to 11 U.S.C. § 305(c), a decision of the court on the matter of abstention is not reviewable. Title 28 U.S.C. § 1334(c)(2) further provides that the *District Court* shall determine whether or not abstention is appropriate. However, the District Court in Arizona has referred all bankruptcy proceedings to the Bankruptcy Court for determination pursuant to General Order No. 126(a), dated July 11, 1984, which would arguably include the Bank-

ruptcy Court's right to abstain under Section 305. Therefore, it is appropriate that the Bankruptcy Court enter the order in this matter. Based upon the foregoing,

IT IS ORDERED that the Chapter 11 proceedings of the Debtor be dismissed.

The foregoing shall constitute findings of fact and conclusions of law under *Fed.R. Civ.P.* Rule 52 and Rules 7052 of the *Rules of Bankruptcy Procedure.*